UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                                           CASE NO: 2:18-cr-188-FtM-38UAM

JEFFREY WILLIAM FORGET
_____/

## OPINION AND ORDER[1]

Before the Court is Defendant Jeffrey Forget's Amended Motion to Suppress (Doc. 43) and the Government's opposition (Doc. 46). The Court held an evidentiary hearing on June 25, 2019, at which Forget was present and represented by counsel. It took the motion under advisement. The Court now denies Forget's motion.

## BACKGROUND

At the hearing, three witnesses testified: Detective Michael Holmberg of the Naples Police Department ("NPD"), Detective Tony Davenport of the NPD, and Nicholas Cronin. The evidence introduced included two outstanding arrest warrants for Forget, the NPD's dispatch notes for the incident, the NPD's Standard Operating Procedures for Property and Evidence, an NPD Property Receipt, two Driver and Vehicle Identifications, and pictures from the traffic stop. Based on all the evidence, the Court makes these findings of fact material to Forget's motion:

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink stops working or directs the user to some other site does not affect the opinion of the Court.

On October 10, 2018, Detectives Holmberg and Davenport were surveying the Naples Inn because its off-season room prices attract illegal activity. The detectives spotted Forget and Cronin leaving the parking lot in Cronin's red pickup truck. Forget was carrying a black backpack. When they returned, the detectives ran Cronin's license plate and learned it was registered in Fort Myers.

Detectives Holmberg and Davenport again saw Forget, Cronin, and a third guy leave the Naples Inn's parking lot that day. Forget got into the front passenger seat of Cronin's truck. He had the backpack and placed it between his legs on the floor. Cronin drove and the third guy rode in the backseat. Although suitcases and bags were in the truck's bed, neither the detectives nor Cronin testified to seeing Forget carrying or loading them.

When Cronin drove away, Detectives Holmberg and Davenport followed in unmarked cars. Detective Davenport pulled next to the truck's passenger side and saw Forget was not wearing a seatbelt. Detective Davenport reported to dispatch the seatbelt violation and the truck's license plate number. He then initiated a traffic stop around 1:00 p.m. Detective Holmberg heard the dispatch call and arrived on scene within a minute.

Detective Davenport approached the driver's window, requested everyone's identification, and asked to search the truck. Cronin did not consent to the search,[2] but he and the backseat passenger provided identification. Forget did not. Almost simultaneously, Detective Holmberg arrived at the passenger's side door and asked Forget his name, birthdate, and social security number. Forget said his name was "Jason

---

[2] The testimony was inconsistent on this issue. Cronin stated that he consented to the search, but Detective Davenport said he did not. The Court credits Detective Davenport's recollection, which also benefits Forget.

2

Farber"[3] and gave a birthdate. He said that he did not know his social security number and lost his wallet. Detective Holmberg recognized prison tattoos on Forget's arms and asked him if he had been arrested or in prison. Forget said no.

Detective Holmberg returned to his police car. At 1:07 p.m., he asked dispatch to pull records for "Jason Farber" and send a K9 unit. About three minutes later, Detective Holmberg had Jason Farber's picture from NPD's database. The picture did not match Forget. Further, Farber lived on Florida's east coast. Because Detective Holmberg needed Forget's identity to write the seatbelt ticket—and Forget kept claiming to be "Jason Farber"—Detective Holmberg requested a biometric fingerprint scanner, better known as a "rapid ID." This device uses a person's fingerprint to retrieve warrants, arrest records, and other identification documents. Because NPD's rapid ID was broken, the detectives asked the Collier County Sherriff Office for its device. Collier County's rapid ID arrived on scene around 1:30 p.m. It identified Forget by his true name and retrieved two outstanding arrests warrants (federal and state). Forget was arrested and handcuffed. They searched his person, which included his wallet. And the K9 unit was cancelled.

After Forget's arrest, Detective Holmberg asked Cronin about the backpack in the truck. Cronin testified he told the detective that he wanted nothing to do with it and refused to take it. Detective Holmberg then searched the backpack, finding counterfeit money with the same serial number. They also searched the suitcases in the truck's bed

---

[3] Jason Farber's surname has been spelled different ways in the Government's response and exhibits: "Farber" and "Farbar." (Doc. 46 at 4; Gov't Ex. 1 at 18; 20; Gov't Ex. 6 at 2). Despite the different spellings, all parties refer to the same individual. And, for this Opinion and Order, the Court will use "Jason Farber."

3

which had counterfeit bills and paraphernalia. The detectives created a property receipt, which Forget signed. (Gov't Ex. 5).

A federal grand jury has indicted Forget for making and possessing counterfeit money in violation of 18 U.S.C. §§ 471 and 472. (Doc. 1). Forget moved to suppress the evidence found during the search, which the Court denied without prejudice because he did not establish standing. (Doc. 37; Doc. 40). Forget then filed the pending amended motion.

**DISCUSSION**

Forget initially sought to suppress several pieces of evidence in his wallet, the backpack, and suitcases from the truck. (Doc. 43). By the end of the hearing, however, Forget conceded the search of his wallet was a proper search incident to arrest and he lacked standing to challenge the search of the suitcases. Forget's concessions (supported by the evidence) leave three issues: (1) whether Forget had standing to suppress the backpack, (2) whether the stop was unreasonably prolonged, and (3) whether the search of the backpack was reasonable. The Court will address each issue in turn.

**1. Standing**

Standing is a shorthand reference for the Fourth Amendment determination of whether an individual has a reasonable expectation of privacy in the invaded area. *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998). "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (citation omitted). The Government disputes

Forget's standing to challenge the search of the backpack. It argues he only showed that he possessed the backpack, not that he had a reasonable expectation of privacy in it. Forget responds that he had the exclusive right to the backpack, and he expected only himself to handle, unzip, or examine the backpack and its contents.

After considering the hearing's evidence and applicable law, the Court finds that Forget has standing to challenge the search of the backpack. The detectives twice saw Forget carrying the backpack in and out of the Naples Inn and Cronin's truck. The backpack held Forget's books, it never left his possession, and he kept it on the floor between his legs while riding in the truck. *See United States v. Barber*, 777 F.3d 1303, 1305 (11th Cir. 2015) (holding a passenger who placed his bag at his feet in the car had a reasonable expectation of privacy in the bag). Detectives Holmberg and Davenport both testified they had no reason to believe the backpack belonged to anyone else. Cronin also wanted nothing to do with the backpack after Forget's arrest, saying it belonged to Forget. Taking this evidence together, Forget had a reasonable expectation of privacy in the backpack.

**2. Length of Traffic Stop**

Having established standing, Forget next argues the traffic stop was unlawfully prolonged. If true, this would invalidate the subsequent search.

Prolonged traffic stops under the Fourth Amendment have been a hot topic as of late. Three cases standout:

- *United States v. Griffin*, 696 F.3d 1354, 1362 (11th Cir. 2012) (holding "unrelated questions posed during a valid *Terry* stop do not create a Fourth Amendment

problem unless they 'measurably extend the duration of the stop'" (citation omitted));

- *Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015) (holding "[a] seizure justified only by a police-observed traffic violation . . ."'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation" (citation omitted and alteration in original)); and

- *United States v. Campbell*, 912 F.3d 1340, 1353 (11th Cir. 2019) (stating *Rodriquez* abrogated *Griffin* and finding "a stop is unlawfully prolonged when an officer, without reasonable suspicion, diverts from the stop's purpose and adds time to the stop in order to investigate other crimes").

The parties disagree which case law controls because Forget was stopped after *Rodriguez* but before *Campbell*. The Court need not wade into this thicket. Regardless of which rule applies, the detectives did not unlawfully prolong Forget's stop with the rapid ID, K9 unit, and the consent to search Cronin's truck.

The rapid ID request was directly related to the purpose of the stop: ticketing Forget for not wearing his seatbelt. The rapid ID did not interfere with the detectives issuing the ticket. Quite the opposite. It facilitated the ticket. Without knowing Forget's identity, the detectives did not know to whom to write the ticket. And by all measures, the detectives acted diligently to determine Forget's identity.

The consent to search and K9 unit requests did not relate to the traffic stop. But neither prolonged it. Detective Davenport asked Cronin to search his truck almost immediately upon approaching the vehicle, and before Forget lied about being "Jason Farber." And Forget stayed with that lie until the rapid ID said otherwise. The K9 unit

6

request also came well before the detectives determined Forget's identity. They did not stall or wait for the K9 unit to arrive on scene before arresting Forget. Once the detectives retrieved Forget's identity and outstanding warrants, they arrested him and cancelled the K9 unit. The detectives conducted no unrelated investigation. At bottom, neither the consent nor K9 requests affected the time to ticket Forget for the seatbelt violation.

Forget prolonged the traffic stop by lying about his identity. The detectives are not to blame for the stop's length. They did not exceed the time needed to issue the traffic ticket to investigate other crimes. Because Forget's stop was not unlawfully prolonged, the Court denies the motion to suppress on this ground.

### 3. Searching Forget's backpack and contents

Forget's last challenge is the search of his backpack post-arrest. The Government argues, and the Court agrees, the search falls within the inventory exception.

Police may conduct warrantless inventory searches of an arrestee's personal property without violating the Fourth Amendment. *See United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010). "Inventory searches of property lawfully in police custody are permissible as long as that search is consistent with the police caretaking function." *United States v. Johnson*, 608 F. App'x 764, 770 (11th Cir. 2015) (internal quotations omitted)); *United States v. Glover*, 441 F. App'x 748, 752 (11th Cir. 2011) ("An inventory search permits a thorough search of property lawfully in police custody, as long as that search is consistent with the police caretaking function."). "When police take custody of a bag, suitcase, box, or any similar container, they may open it in order to itemize its contents pursuant to standard inventory procedures." *Farley*, 607 F.3d at 1333. "Judicial tolerance of [inventory] searches derives from the need to protect the owner's property,

7

to protect the police from disputes over lost property and to protect the police from potential danger." *United States v. Laing*, 708 F.2d 1568, 1570 (11th Cir. 1983)

Inventory searches, however, have limits. It "is not a surrogate for investigation, and the scope of an inventory search may not exceed that necessary to accomplish the ends of the inventory." *United States v. Khoury*, 901 F.2d 948, 958 (11th Cir. 1990). "Inventory searches must be limited to effectuation of the recognized purposes, for which they are conducted and they may not be used as a pretext for intrusive investigatory searches that would otherwise be impermissible." *Laing,* 708 F.2d at 1570 (internal quotes omitted). Yet, a valid inventory search "is not vitiated by a police officer's suspicion that contraband or other evidence may be found." *United States v. Grossman*, 223 F. App'x 963, 968 (11th Cir. 2007) (internal quotations omitted). And "a legitimate non-pretextual inventory search is not made unlawful simply because the investigating officer remains vigilant for evidence during his inventory search." *Khoury,* 901 F.2d at 959.

After Forget's arrest, Cronin said the backpack belonged to Forget and he wanted no part of it. Cronin was not being arrested and was free to leave the scene of the traffic stop. Detective Holmberg thus did the only thing he could—take the backpack into police custody. For obvious reasons it could not be left at the side of the road. From there, the Government presented uncontroverted evidence that Detective Holmberg immediately inventoried the backpack and itemized its contents on a standard "Receipt for Property" form per the NPD's standard procedure on the "proper preservation, storage, security, and disposition of property and evidence." (Gov't Ex. 4 at 1). Forget does not challenge the routine nature of the procedure or the validity of the NPD's procedures. Nor does he argue the inventory check was a ruse for an investigatory search. *See Colorado v.*

*Bertine*, 479 U.S. 367, 372 (1987) (finding "no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation").

The inventory search was also reasonable under the circumstances. *See Liang*, 708 F.2d at 1571 ("As always, the reasonableness of the inventory search depends on the particular facts and circumstances."). By securing the backpack's contents, Detective Holmberg protected Forget's property from unauthorized interference and the NPD from theft accusations. And knowing what was inside the backpack avoided any danger to the detectives and the public from what was inside. Detective Holmberg testified he had no idea what was in the backpack, and he was concerned it may have drugs, weapons, or other dangerous items. His concern was reasonable because the rapid ID pulled Forget's outstanding arrest warrants for drug use and the detectives were monitoring the Naples Inn for illegal activity.

Forget also challenges, albeit in passing, the inventory search for happening at the traffic stop, and not the police station. Inventory searches often happen at police stations. But the Fourth Amendment does not necessarily prohibit inventories taken elsewhere. *See Colorado v. Bertine*, 479 U.S. 367, 373 (1987) (noting "the station-house setting of the inventory search" was not critical in an earlier case); *United States v. Prescott*, 599 F.2d 103, 105 (5th Cir. 1979) (stating "[p]olice may lawfully conduct such searches while the vehicle is still on the highway awaiting towing, a precaution that may be necessary to protect the property, the police or the public while the vehicle is abandoned, or even while it is being towed"); *United States v. Morillo*, No. 08 CR 676 (NGG), 2009 WL 3254431, at *9 (E.D.N.Y. Oct. 9, 2009) ("Inventory searches are usually conducted at police stations, but the Fourth Amendment does not require that they be conducted at any particular

location." (citation omitted)). What matters is whether the search was made pursuant to standard police procedures. And here it was.

The NPD's operating procedures states "[a]ll property/evidence taken into custody by Department members shall be brought to the Police Department and placed in the secured evidence lockers or the secured outdoor property compound as soon as practicable, but no later than the end of the seizing employee's tour of duty." (Gov't Ex. 4 at 2). This language does not mandate (or even suggest) that inventory searches must occur at a set time or location. Rather, what matters is the search be practicable. As the Government aptly argues, this can include an on-scene search. The record reflects that Detective Holmberg acted according to the NPD's procedures when he immediately inventoried the backpack.

Taking the evidence together, the search of the backpack and its contents was a valid inventory search. Even if not, the backpack would have been inevitably searched at the police station per the NPD's standard intake procedures to trigger the inevitable discovery doctrine. (Gov't Ex. 4 at 2). The Court thus denies Forget's motion to suppress.

Accordingly, it is now

**ORDERED:**

Defendant Jeffrey Forget's Amended Motion to Suppress (Doc. 43) is **DENIED**.

**DONE AND ORDERED** in Fort Myers, Florida on this 16th day of August 2019.

*SHERI POLSTER CHAPPELL*
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record